UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   24-cr-80134-Rosenberg/Reinhart

UNITED STATES OF AMERICA

v.

JAMARI DE'SEAN PAGE,

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and

JAMARI DE'SEAN PAGE (hereinafter referred to as the "Defendant") enter into the following

agreement:

1.   The Defendant agrees to plead guilty to Count 2 of the Indictment, which charges the

Defendant with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation

of 18 U.S.C. § 924(c)(1)(A)(i). The Defendant agrees that he is, in fact, guilty of this offense.

2.   In exchange for the Defendant's guilty plea, this Office agrees to recommend the

dismissal of Counts 1, 3, 4 and 5 of the Indictment at sentencing.

3.   The Defendant is aware that the sentence will be imposed by the Court after considering

the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing

Guidelines"). The Defendant acknowledges and understands that the Court will compute an

advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be

determined by the Court relying in part on the results of a pre-sentence investigation by the Court's

probation office, which investigation will commence after the guilty plea has been entered.   The

1

Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines.   The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range.   Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.

4.   As to Count 2 of the Indictment, the Defendant understands and acknowledges that the Court must impose a mandatory minimum sentence of at least five (5) years in prison and may impose a maximum sentence of up to life in prison, followed by a term of supervised release of up to five (5) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and may order forfeiture.   The Defendant understands and acknowledges that the sentence for Count 2 of the Indictment must be consecutive to any other sentence of imprisonment imposed at sentencing.

5.   The Defendant further understands and acknowledges that, in addition to any sentence imposed, a special assessment in the amount of $100 will be imposed on the Defendant.   The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing.   If a Defendant is financially unable to pay the special assessment, the Defendant agrees to present

evidence to this Office and the Court at the time of sentencing as to the reasons for the Defendant's failure to pay.

6.  This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.  This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the Defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this recommendation if the Defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement,

3

including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8.   This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence within the advisory sentencing guideline range produced by application of the Sentencing Guidelines.   Although not binding on the probation office or the Court, this Office and the defendant further agree that, except as otherwise expressly contemplated in this Plea Agreement, they will jointly recommend that the Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

9.   The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant also is aware that any estimate of the probable sentencing range or sentence that the Defendant may receive, whether that estimate comes from the Defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The Defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   The Defendant understands and acknowledges, as previously acknowledged above, that the Defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the Defendant, this Office, or a recommendation made jointly by the Defendant and this Office.

10.   The Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any firearm or

ammunition involved in or used in the commission of the offenses, in violation of 18 U.S.C. § 924, or any violation of any other criminal law of the United States, pursuant to 18 U.S.C. § 924(d)(1).

11.     The Defendant agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The Defendant further agrees to waive: any constitutional, legal, and equitable claim or defense to the forfeiture of assets in any judicial or administrative proceeding; any applicable time limits for administrative or judicial forfeiture proceedings; any claim or defense under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution; the requirements of Fed. R. Crim. P. 32.2; and any appeal of the forfeiture.   The Defendant understands that this plea agreement shall serve as a withdrawal of any pending administrative forfeiture claim. Specifically, the Defendant and the Government agree that the United States currency seized on April 19, 2024 from the Defendant's person ($3,712) and from the Defendant's home ($15,950) shall be administratively forfeited, and the Defendant waives any objections to that forfeiture.

12.     The Defendant also agrees to assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of directly forfeitable or substitute assets.   This assistance shall include: disclosing within 14 calendar days in a Financial Disclosure Statement provided by this Office the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, any assets involved in the offense[s] of conviction, and those held by a spouse, nominee, or other third party; taking all steps necessary to locate assets, wherever located; agreeing to the entry of an order enjoining the transfer or encumbrance of assets; transferring assets to the United States by delivery to this Office any necessary and appropriate documentation to deliver good and marketable title to

5

assets; liquidating assets, or completing any task which will result in a payment towards the

forfeiture money judgment; and not contesting or impeding in any way with any criminal, civil or

administrative forfeiture proceeding concerning the forfeiture.

      13.   This is the entire agreement and understanding between this Office and the Defendant.

There are no other agreements, promises, representations, or understandings.


HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 4/17/25      By: _____

JUSTIN CHAPMAN
ASSISTANT UNITED STATES ATTORNEY

Date: 4/17/25      By: _____

PETER BIRCH
ATTORNEY FOR DEFENDANT

Date: 4/17/25      By: _____

JAMARI DE'SEAN PAGE
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  24-cr-80134-Rosenberg/Reinhart

UNITED STATES OF AMERICA

v.

JAMARI DE'SEAN PAGE,

Defendant.

_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and JAMARI DE'SEAN PAGE ("the Defendant") agree that had this matter proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt:

Count 2 Elements – Possession of a Firearm in Furtherance of a Drug Trafficking Crime

> (i)   the Defendant committed the drug trafficking crime charged in Count 1 of the Indictment; and

> (ii)  the Defendant knowingly possessed a firearm in furtherance of that crime, as charged in the Indictment.

### Facts

1.   Between January and April of 2024, the Defendant was advertising the sale of marijuana using his social media accounts "@mari_montana1670" and "@maxrivers84." Undercover law enforcement agents contacted the Defendant on these accounts and arranged the purchase of marijuana from the Defendant on three separate occasions between February and April of 2024.

2.   On February 8, 2024, undercover law enforcement officers arranged to purchase two ounces of marijuana from the Defendant at 1862 Okeechobee Boulevard in West Palm Beach, Florida. Later that same day, undercover law enforcement observed the Defendant enter the parking lot at 1862

1

Okeechobee Boulevard and send messages to the undercover law enforcement officer that he was there. An undercover law enforcement officer then purchased approximately 57 grams of marijuana from the Defendant, which field tested positive for marijuana.

3.    On February 27, 2024, undercover law enforcement officers again contacted the Defendant and arranged to purchase marijuana. Undercover law enforcement officers exchanged messages with the Defendant and observed him exit his residence in Royal Palm Beach, Florida and enter a Grey Hyundai Genesis and depart toward the meet location. The undercover law enforcement officer then purchased 101 grams of marijuana from the Defendant, which field tested positive.

4.    On March 21, 2024, law enforcement conducted an additional undercover purchase of 22.5 grams of marijuana from the Defendant, which field tested positive.

5.    On April 19, 2024, law enforcement executed search warrants for two addresses associated with the Defendant. The first address was his residence in Royal Palm Beach, Florida. The second address was located on Sparrow Drive, also in Royal Palm Beach, Florida. Both locations were within Palm Beach County and the Southern District of Florida. During the execution of the search warrants, law enforcement discovered 141 grams of marijuana, 9mm ammunition and $15,950 at the Defendant's residence. Law enforcement discovered 33.8 grams of marijuana at the Sparrow Drive location.

6.    On April 19, 2024, law enforcement conducted a traffic stop of the Defendant and searched his vehicle in Royal Palm Beach, Florida. A hidden compartment was found beneath the front, middle console. A search of the console revealed 230 grams of marijuana packaged for sale, a digital scale, three cell phones, a loaded Glock 17 9mm pistol, and two loaded extended 9mm caliber magazines. A search of the Defendant's person revealed $3,712 in small bills. The Defendant was the sole occupant and registered owner of the vehicle. The Glock 17 9mm pistol found in the Defendant's

vehicle described above was test-fired and confirmed to be a firearm.  The firearm and ammunition were also determined to have traveled in interstate commerce.

7.     The PBSO crime lab tested and confirmed that all the marijuana purchased by law enforcement from the Defendant and found in his residences and vehicle was in fact marijuana.

8.     A DNA profile was developed from the trigger/guard of the Glock 17 9mm pistol and it was determined that the profile was a mixture of at least five individuals. The Defendant could not be ruled out as a possible contributor to this mixed DNA profile.  A DNA profile was also developed from the sights of the Glock 17 9mm pistol and it was determined that the profile was a mixture of at least two individuals. The Defendant could not be ruled out as a possible contributor to this mixed DNA profile.  A DNA expert determined that there is "very strong support" that the Defendant was a contributor to both the trigger/guard and sights of the Glock 17 9mm pistol.

9.     All events occurring in the Southern District of Florida.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 4/17/25          By: _____
                            JUSTIN CHAPMAN
                            ASSISTANT UNITED STATES ATTORNEY

Date: 4/17/25          By: _____
                            PETER BIRCH
                            ATTORNEY FOR DEFENDANT

Date: 4/17/25          By: _____
                            JAMARI DESEAN PAGE
                            DEFENDANT

3